

## NUMBER 13-13-00701-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **LEROY KILLIAN ARISTA,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

## ORDER OF ABATEMENT

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Order Per Curiam

A jury found appellant Leroy Killian Arista guilty of capital murder, and the trial court

sentenced him to automatic life in prison without the possibility of parole. *See* TEX. PENAL

CODE ANN. § 19.03(a)(2) (West, Westlaw through 2015 R.S.). On appeal, Arista

challenges the trial court's order denying him a hearing on his motion for new trial, in which he alleged jury misconduct.   We abate and remand.[1]

## I.   BACKGROUND

### A.   Trial Evidence

On July 12, 2011, Edgar Jimenez called the police when he discovered that the garage door and a sliding door to his neighbor's home were open.   Officers entered the home and discovered that Willis Kimmons, a gun collector and retired Border Patrol agent, lay dead in his bed.   Officers found ammunition in the home, but many of the corresponding firearms appeared to be missing.   The front door was found damaged, which led officers to believe that unauthorized entry into the home had been made. Jimenez told police that he believed that David Tarbutton was involved in Kimmons' death because David was one of only a few people to whom Kimmons had shown his gun collection.   Jimenez testified that he had known David since high school but that they had grown apart because David became "close to gangs" and began using drugs.   David was known to authorities as "a thief and a burglar" and a "gang member."

Chris Tarbutton, David's brother, testified that sometime after Kimmons was found dead, he and David were at a residence when Arista arrived with rifles and a revolver. George Saenz, a police officer, testified that David told the officers that a person he knew as "Leroy"—whose last name began with an "A"—had been involved in Kimmons' murder. Thereafter, David and Arista were arrested.

---

[1] Arista raises nineteen issues on appeal, ranging from legal sufficiency to the trial court's ruling denying his motion for new trial.

When Arista was arrested, officers discovered in Arista's car a presentation box for a .357 caliber revolver with the Border Patrol logo, which appeared to have been forced open, a 'scarecrow' mask, a shirt, a wig, and several pairs of gloves. Officers determined that the gun box found in the car belonged to Kimmons. At Arista's residence, officers discovered a bucket with a t-shirt that smelled of gasoline, and there was testimony presented that gasoline destroys DNA. In Arista's bedroom, officers found a "brown leather sleeve," a ski mask, a "black plastic face mask," and "some black gloves with scraping on the fingertips." Officers determined that the gun sleeve belonged to Kimmons. A pair of shoes found in Arista's bedroom had a wavy pattern tread, which appeared to match a shoe print discovered on Kimmons' property.

During the search of Arista's residence, officers noted that surveillance cameras were located throughout the house and that wires in the master bedroom were dangling. Officers eventually determined that a computer component that controls the surveillance cameras in Arista's home was missing. Arista's mother, Peggy Arista, testified that some days before the police searched Arista's residence, someone had stolen the "box" that controlled the surveillance system.

One of Kimmons' neighbors, Bryan Winicki, testified that on the night before Kimmons was found dead in his home, Winicki observed a "grayish, silver Neon" in an orange grove near Kimmons' home. Winicki stated that the vehicle stood out "because there's never really a car there, so, like, it caught my attention." Winicki said that in his twenty years of living in that neighborhood, he had never seen anyone parked in that

3

area. Winicki did not observe anyone sitting in the car. Winicki testified that he was acquainted with Arista and that "usually," Arista "would drive that silver Neon."[2]

The trial court admitted State's Exhibit 163, which is a tape-recorded conversation between Arista, Peggy, and Arista's friend, Randy. During the conversation, Arista stated that he would be "doing some more licks" and that he "beat the mother fucker's ass yesterday." An investigator, Jody Tittle, testified that the term "hit a lick" means "to commit [a] home invasion."

The investigation further revealed that a shirt recovered on Kimmons' property contained Arista's DNA, and another shirt contained David's DNA. A second DNA analyst compared the samples and came to the same conclusion.

After the State rested, Arista called David to testify on his behalf. David, who was serving a life sentence after he confessed to murdering Kimmons, testified that he lied to the police when he told them that Arista had been involved in the murder. David testified that on the night of the murder, he asked Arista to drive him to Kimmons' house to pick up "some stuff" that belonged to him, that Arista did not go inside Kimmons' house, and that Arista did not know that David was going to burglarize Kimmons' house or hurt anybody inside.

At the close of all the evidence, the jury found Arista guilty of capital murder and the trial court imposed a mandatory sentence of life in prison without the possibility of parole. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1 (West, Westlaw through 2015

---

[2] At trial, Winicki identified Arista's car as the same one he saw in the orange grove.

4

R.S.) (mandating life in prison without parole for capital murder when the State does not seek the death penalty).

## B.    Motion for New Trial

Following trial, Arista filed a timely motion for new trial contending, among other things, that the jury used out-of-court media reports of Arista's alleged gang affiliation with David to discredit David's in-court testimony that Arista had no intention of committing capital murder.    Specifically, Arista's motion alleged the following:

> During [jury] deliberation, the jurors discussed outside evidence that [David] was a gang member, speculating that [David] lied on [Arista's] behalf [by] testifying that [Arista] had nothing to do with [Kimmons'] murder and knew nothing about [David's] plans, because they were both gang members. Sylvia Lynn Tennison, Juror #12, came to [Arista's trial counsel's law office], unsolicited and crying, to inform [trial counsel] that Linda Corinne Henrichson, Juror #2, had stated during deliberations that the only eyewitness, [David], was a "gang member," and this membership is the reason why he testified falsely on behalf of [Arista], suggesting that [Arista] was a gang member, as well.    While there was extensive publicity regarding gang membership, prior to and during trial, there was no testimony or reference to [Arista's alleged affiliation with any gang] during the trial.    The local media in and around Mission, Texas reported that "[Arista], 23, and [David], 19, both of Mission and reputed members of the Locos 13 street gang, were arraigned," as well as reports that "Xanax and gang related material was also found at Arista's residence, police said."
>
> . . .
>
> Here, there was no testimony presented at trial about whether defense witness, [David], or [Arista] were members of any gang or had any gang affiliation.    However, during deliberations, jurors made derogatory comments about such gang affiliation, suggesting that [Arista's alleged gang affiliation] was a justification [to discredit David's testimony].    Due to the fact that this evidence did not originate from evidence presented in court, but rather from outside sources concerning matters which [Arista] was not able to properly respond to or confront, the case should be reversed and a new trial granted.

To support this allegation, Arista attached his trial counsel's affidavit wherein trial counsel attested to the following facts:

> Sylvia Lynn Tennison, Juror #12. . . came to my office unsolicited. Mrs. Tennison was crying and obviously distraught. Mrs. Tennison had come to my office, of her own free will, to tell me that Juror #2, Linda Corinne Henrichson stated that [David], the witness for the defense and the only eye witness to the crime, was a "gang member," which is why he would testify and lie for [Arista], implying that [Arista] was a gang member, as well.
>
> While there was extensive publicity on [David] and [Arista] regarding gang membership, there was no testimony or reference to same at trial. Any information on gang membership must have come from outside of the evidence offered in court.

Also attached to Arista's motion for new trial were three media reports, all published before the trial, in which Arista and David were described as "reputed" members of the same gang.

In response to Arista's motion for new trial, the State filed a motion to deny a hearing on Arista's claim of jury misconduct, arguing that Arista's trial counsel, the affiant, could not have been privy to any comments made during jury deliberation and, as such, had no personal knowledge of the facts giving rise to the allegation of jury misconduct. The State therefore argued that the affidavit in support of Arista's motion for new trial was not proper to merit a hearing. The next day, the trial court granted the State's motion to deny a hearing on Arista's claim of jury misconduct.

More than thirty days after the trial court sentenced Arista to life in prison, Arista filed a motion requesting that the trial court reconsider its order denying him a hearing on his claim of jury misconduct. In his motion for reconsideration, Arista explained that after juror Tennison spoke to trial counsel at his law office, she made herself unavailable to provide an affidavit—even after trial counsel hired a private investigator to find her. Attached to Arista's motion for reconsideration was an affidavit from Arista's private investigator, who attested to the following facts concerning juror Tennison's unavailability:

6

On numerous occasions[,] I attempted to contact [juror] Tennison . . . to obtain an affidavit from her. . . I called every phone associated with her. I went to her place of employment and left several cards. At her residence[,] I placed business cards on her garage door, the windshields of both vehicles parked in her driveway and her front door. I even contacted several family members in order to speak with [her] but was not successful. I was informed that she was not available and, therefore, could not be in contact with her but I continued to try for several weeks anyway.

Also attached to Arista's motion to reconsider was juror Tennison's affidavit, in which she confirmed that she avoided Arista's trial counsel and his investigator after she spoke to trial counsel at his law office. Specifically, juror Tennison stated that

[Arista's trial counsel] and his investigator were trying to get a hold of me after I had gone to [trial counsel's] office and spoken with him about the contents of [trial counsel's] [a]ffidavit, but I did not respond to [] their requests. I am now coming forward and, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that [trial counsel's] affidavit is true and correct.

In response to Arista's motion to reconsider, the State filed a motion to strike the affidavits offered by juror Tennison and the investigator on the basis that the affidavits "could be construed" as constituting an untimely amendment to Arista's motion for new trial, since they were filed more than thirty days after the trial court sentenced Arista to life in prison. See TEX. R. APP. P. 21.4(b) (providing that a motion for new trial may not be amended more than thirty days after sentencing without leave of court). Thereafter, the trial court granted the State's motion to strike the affidavits offered by juror Tennison and the investigator, thereby affirming its decision to deny a hearing on Arista's claim of jury misconduct.

On December 5, 2013, the trial court denied Arista's motion for new trial by a written order that incorporated findings of fact and conclusions of law. The relevant findings with respect to Arista's claim of juror misconduct are as follows:

7

The Court FINDS that the claims of [Arista] of jury misconduct are not determinable from the record of the case, and the Court further FINDS that . . . no evidentiary hearing on claims of jury misconduct having been conducted for lack of establishment of [Arista] to entitlement to such hearing by timely filing a proper affidavit, [Arista] did not substantiate this claim.

. . . .

The Court concludes as a matter of law, hearing on his claim of jury misconduct having been denied, that [Arista] has not substantiated by competent evidence his claim of jury misconduct as alleged in his Motion for New Trial.

. . . .

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Motion of [Arista] for new trial be and hereby is in all respects Denied.

This appeal followed.

## II. DISCUSSION

On appeal, Arista contends that the trial court erred in failing to hold an evidentiary hearing on his claim of jury misconduct. The purpose of a hearing on a motion for new trial is to give the defendant an opportunity to fully develop the matters raised in his motion. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). The court of criminal appeals has recognized that "the hearing on a motion for new trial is a critical stage of the proceedings. It is the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review." *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978). Although a hearing on a motion for new trial is not an absolute right, it becomes mandatory when the motion for new trial and accompanying affidavit (1) raise matters which are not determinable from the record, and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Lucero v. State*, 246 S.W.3d 86, 94 (Tex.

8

Crim. App. 2008).  We review a trial court's decision to deny a new-trial hearing for an abuse of discretion.  *Id.*

As a threshold matter, the State argues that the trial court correctly denied a hearing on Arista's motion for new trial because the affidavit offered by trial counsel to support his claim of jury misconduct was defective.  Specifically, the State asserts that no juror affidavit was attached to his original motion, and his trial counsel's affidavit was hearsay and lacked personal knowledge of jury misconduct.  However, a defendant requesting a new trial for jury misconduct may support his motion for new trial with the affidavit of a juror, or some other person who was in a position to know the facts, or may state some reason or excuse for failing to produce the affidavits.  *See Baldonado v. State*, 745 S.W.2d 491, 493 (Tex. App.—Corpus Christi 1988, pet. ref'd) (citing *Dugard v. State*, 688 S.W.2d 524, 528 (Tex. Crim. App. 1985); *Bearden v. State*, 648 S.W.2d 688, 690 (Tex. Crim. App. 1983); *Barajas v. State*, 732 S.W.2d 727, 730 (Tex. App.—Corpus Christi 1987, pet. ref'd)); *see also Garcia v. State*, 291 S.W.3d 1, 10 (Tex. App.—Corpus Christi 2008, no pet.).  Arista complied with this rule.  The record shows that Arista timely filed his trial counsel's affidavit, which recited what juror Tennison told him regarding the alleged jury misconduct, and then followed up by offering affidavits from his investigator and juror Tennison to explain why juror Tennison was unavailable to provide an affidavit concerning jury misconduct when the motion was originally filed.[3]  Because

_____

[3] The State argues that the affidavits offered by Arista's investigator and juror Tennison were filed more than thirty days after sentencing and therefore constituted untimely "amendments" to his original motion for new trial under rule 21.4(b) of the Texas Rules of Appellate Procedure.  *See* TEX. R. APP. P. 21.4(b) (providing that a motion for new trial may not be amended more than thirty days after sentencing without leave of court).  We disagree.  Under rule 21.4(b), a defendant may not amend or enlarge his original motion for new trial with *additional claims* more than thirty days after sentencing if the State objects to the addition at the time those claims are raised.  *See State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007); *see also Cueva v. State*, 339 S.W.3d 839, 859 (Tex. App.—Corpus Christi 2011, pet. ref'd)

Arista's affidavits were not defective, we now consider whether his motion and accompanying affidavit (1) raised a matter not determinable from the record, and (2) established reasonable grounds showing that he could potentially be entitled to relief.

Under rule 21.3(f) of the Texas Rules of Appellate Procedure, a new trial may be granted when, after retiring to deliberate, the jury received "other evidence" not adduced at trial.[4]  *See* TEX. R. APP. P. 21.3(f).  Arista's motion for new trial cited rule 21.3(f) and specifically requested a hearing to determine whether the jury received "other evidence" not adduced at trial.  As the trial court expressly found, Arista's motion and affidavit raised a matter that could not be determined from the record—specifically, whether the jury used outside media reports of Arista's alleged gang affiliation with David to discredit David's alibi testimony that Arista did not intend to commit capital murder.  The first requirement is met.

The question therefore concerns the second requirement—i.e., whether Arista demonstrated reasonable grounds to believe that he could potentially be entitled to relief on his claim of jury misconduct.  The court of criminal appeals has explained the affidavit

---

(interpreting TEX. R. APP. P. 21.4(b)).  Here, although the affidavits offered by juror Tennison and the investigator were filed more than thirty days after sentencing over the State's objection, they did not alter or enlarge his original motion with additional claims.  Rather, Arista's claim of jury misconduct—and the facts supporting it—remained the same; the affidavits simply explained why juror Tennison was not available to provide an affidavit substantiating Arista's claim of jury misconduct when Arista originally filed his new-trial motion.  Therefore, the affidavits should not have been struck from consideration in determining whether Arista's claim of jury misconduct merited an evidentiary hearing.  *See Cueva*, 339 S.W.3d at 859.

[4] To warrant a new trial on the basis that the jury received other evidence, "the defendant must show that (1) the other evidence was actually received by the jury, and (2) it was detrimental."  *Ford v. State*, 129 S.W.3d 541, 548 (Tex. App.—Dallas 2003, pet. ref'd) (citing *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981); *Eckert v. State*, 623 S.W.2d 359, 364 (Tex. Crim. App. 1981), *overruled on other grounds by Reed v. State*, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988); *Carroll v. State*, 990 S.W.2d 761, 762 (Tex. App.—Austin 1999, no pet.)).

10

entitling a defendant to a new-trial hearing need not "reflect every component legally required to establish relief but [it] must reflect that reasonable grounds exist for holding that such relief could be granted." *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). Further, a supporting affidavit need not establish a prima facie case for the ground asserted in the motion. *See id.*

Here, Arista's motion was timely filed, properly presented to the trial judge and supported by his trial counsel's sworn affidavit. In trial counsel's affidavit, juror Tennison is alleged to have reported that juror Henrichson referred to David as a gang member and that he would be willing to lie for Arista at trial, thereby implying that David's testimony in Arista's favor was a form of gang loyalty. Arista also attached media reports that labeled him and David as "reputed" members of the same gang—a label which he contends the jury used to discredit David's testimony. Juror Tennison confirmed these facts in her affidavit, which was attached to Arista's motion for reconsideration. Based on this evidence, we conclude that Arista demonstrated reasonable grounds to believe that the jury might have used out-of-court media reports to discredit David's testimony. *See Jordan*, 883 S.W.2d at 665. Because Arista's motion and affidavit were sufficient, a hearing on the motion was mandatory. *See id.*

The State argues that because the evidence admitted at trial showed that David was a gang member, it was within the province of the jury to infer that Arista was also a gang member since they were friends "well before the crime." The State asserts that because the jury could infer gang affiliation through admissible evidence, the pretrial media reports provided jurors with nothing that the evidence did not already show. Thus, according to the State, Arista did not demonstrate reasonable grounds potentially entitling

11

him to relief because admissible evidence allowed the jury to infer that David lied at trial to help a fellow gang member. However, what jurors allegedly learned from news sources concerning gang affiliation is distinguishable from what they could infer from the evidence at trial. David testified that he met Arista only one month before the crime occurred, and there was no direct evidence that Arista was a gang member—much less a member of the same gang as David. At best, if the trial evidence supported an inference of gang affiliation, the inference was exceedingly weak when compared against media reports that expressly identified Arista and David as "reputed" members of the same gang. Because the evidence supporting an alleged gang affiliation between Arista and David was exceedingly weak—if not nonexistent—we cannot agree with the State that jurors were aware of a possible gang affiliation through admissible evidence. Moreover, even assuming that the jury could infer gang affiliation though the evidence admitted at trial, the jury may have impermissibly considered outside evidence of media reports to discredit David's testimony.

For the foregoing reasons, we conclude that Arista's motion for new trial alleging jury misconduct raised a matter that is not determinable from the record and established the existence of reasonable grounds potentially entitling him to relief. *See Lucero*, 246 S.W.3d at 94. Although Arista has a right to be heard on his claim that evidence not admitted at trial influenced the jury's verdict, this Order of Abatement is not to be read as reflecting any opinion on the merits of such claim.

### III.    ABATEMENT

This appeal is ABATED and the cause REMANDED to the trial court for a hearing on Arista's motion for new trial alleging jury misconduct. The trial court shall hold a

12

hearing on Arista's claim of jury misconduct on or before the expiration of sixty days from the date of this order. If the motion is granted after a hearing, the trial court must immediately forward a copy of the order granting the motion to this Court, upon receipt of which we will address the merits of Arista's legal sufficiency issue.[5] If the motion is denied after a hearing, the trial court shall prepare an order denying the motion along with findings of fact and conclusions of law and include them in a supplemental clerk's record. The trial court shall also prepare a reporter's record of the hearing. The supplemental clerk's record and reporter's record shall be filed in this Court on or before the expiration of ninety days from the date of this order.

This appeal is abated and removed from this Court's active docket. The appeal will be reinstated on this Court's active docket only when the supplemental clerk's record and reporter's record of the hearing is filed in this Court.

It is so ORDERED.

PER CURIAM

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
18th day of December, 2015.

---

[5] Because the remedy for Arista's legal sufficiency issue is an acquittal, we will address the merits of that issue in a memorandum opinion that is forthcoming. *See Brooks v. State*, 323 S.W.3d 893, 903 (Tex. Crim. App. 2010).

13